679 P.2d 647

**CITY OF POCATELLO, Plaintiff-Respondent,**

v.

**Cleve D. and Marilyn ANDERTON; the Lockhart Co.; Bannock County, a political subdivision of Idaho; and a tract of land more particularly described in the complaint, Defendants,**

**and**

**Bardell J. and Mae M. Anderton, Defendants-Appellants.**

No. 14531.

Supreme Court of Idaho.

March 29, 1984.

James E. Harward, Pocatello, for defendants-appellants.

William L. Herrington, Moscow, for plaintiff-respondent.

HUNTLEY, Justice.

This appeal presents two issues for resolution: (1) whether the trial court erred in denying a request for jury trial which was made two years after the date of service of

the last pleading directed to an issue triable by jury; and (2) whether condemnees in eminent domain proceedings are, in the circumstances presented, entitled to recover attorney fees as part of the costs reasonably incurred in determining the just compensation due them.

This appeal rose from the condemnation by the City of Pocatello of thirteen acres along the Portneuf River for parkland. A written offer of $11,250 was made to the Andertons, which they refused. The City filed a complaint in October, 1979, alleging the right of eminent domain and an answer was filed by the Andertons in December of the same year. Partial summary judgment condemning the land was subsequently granted the City, and the court ordered that the trial be limited to the determination of the amount of compensation due the Andertons.

A note of issue was filed by the City in December, 1980, wherein it was stated that a jury trial had been requested. The Andertons argue that this constituted a demand for a jury by the City. The City contends that the statement was made in error, and should have read that a jury trial was *not* requested, and that in any event the note of issue did not serve as a demand for a jury. In January, 1981, the Andertons filed a second answer to the original complaint. An amended complaint adding two new defendants was filed in June of 1981, and an answer thereto was filed in July, 1981. The Andertons filed a pretrial memorandum on December 3, 1981, eight days before the commencement of trial. The court held that the right to a jury trial had been waived by the failure to make a timely demand therefor.

At trial the City continued to assert that its offer of $11,250 accurately reflected the value of the property. The Andertons presented evidence placing the value of the land at $65,000. The court awarded $22,425 as just compensation for the land plus $5,198.16 as interest from the date of filing. The court did not declare one party or the other the "prevailing party."

I

Rule 38(b) of the Idaho Rules of Civil Procedure provides that any party may demand a jury trial of an issue triable by jury, by making a demand therefor within ten days after the service of the final pleading directed to such an issue. Failure to make a timely demand constitutes waiver of the right. *Meyer v. Whipple*, 94 Idaho 260, 486 P.2d 271 (1971).

The final pleading directed to an issue triable by jury was the answer filed by the Andertons in December, 1979. The memorandum to the court regarding a jury was not filed until two years later. This "request" was made far beyond the ten day limit set forth in I.R.C.P. 38(b), and was therefore ineffective.[1] The Andertons' contention that the second answer to the original complaint, filed in January 1981, is the last pleading directed to an issue, and that the first answer filed by them in December, 1979 was merely an affidavit is fallacious. The first document was entitled "Answer to Summons and Complaint" and contained a denial of the right of the city to condemn the land. It also raised defenses based on the United States Constitution. Following the rule of liberal construction of pleadings as required by I.R.C.P. 8(f), we hold that the contents of that document were sufficient to constitute a pleading directed to an issue within the intendment of Rule 38(b).

Although it is true that an amended or supplemental pleading which raises a new issue revives the right to demand a jury trial as to that new issue, *State ex rel. Symms v. Thirteenth Judicial District*, 91 Idaho 237, 419 P.2d 679 (1966), that rule is of no assistance to the Andertons here. No new issues were raised by any of the subsequent pleadings. The right to de-

---

1. Because we determine that the final responsive pleading for the purpose of Rule 38(b) was served in December, 1979, we do not reach the question of whether the note of issue constitut-

ed a valid demand for jury. Since the note was filed a full year after the service of the last pleading directed to an issue triable by jury, it would not have been timely in any case.

mand a jury trial expired in December 1979 and was not thereafter revived.

Notwithstanding the failure of a party to demand a jury in an action, the court in its discretion may order a trial by jury. I.R.C.P. 39(b). The appellants argue that the court abused its discretion by failing to do so. Since the matter has been entrusted to the discretion of the trial court, in the absence of proof of abuse of discretion, this court ordinarily will not intervene in the trial court decision. The appellants have given no reason for their failure to make a timely demand; moreover, the demand purportedly made occurred on the eve of the trial. Therefore, we find no abuse of discretion in denying the request.

The dissent argues that the Constitution specifically entrusted to the legislature's law-making power the right and obligation to pass a *substantive* law setting out the manner in which a constitutional right (here the right to jury trial) may be waived, but that this Court has usurped that legislative function, and denigrated the right by providing by a rule of *procedure* (I.R.C.P. 38(b)) that waiver of the right may occur by mere failure to assert it. This issue was considered by the court in *R.E.W. Construction Co. v. District Court of the Third Judicial District*, 88 Idaho 426, 400 P.2d 390 (1965), wherein we adopted the view of the Illinois Supreme Court when it held:

> While the right to a trial by jury is a constitutional guarantee Section 64 imposes regulations as to what must be done by a litigant to display his desire for a jury trial so as to insure the orderly presentation of the business of the court. This section has been held to be reasonable in its requirements, and constitutional. The provision is not intended to impose a burden on a person or to create a condition precedent of the enjoyment of a constitutional privilege, but merely establishes an orderly method for a party to a lawsuit to inform the court of his desire to have his case tried by a jury, as is his right. 88 Idaho at 441-42, 400 P.2d

390 (quoting *Roszell v. Gniadek*, 348 Ill. App. 341, 109 N.E.2d 222, 224 (1952)) (citations omitted).

We found no deprivation of the right to jury trial as guaranteed by Idaho Constitution, art. 1, § 7; the adoption of I.R.C.P. 38(b) was a proper exercise of the inherent rule making power of this court, and merely establishes the orderly procedure to be employed in determining whether a party has waived the right to trial by jury. Moreover, the validity of Rule 38(b) as a rule of procedure is implicitly recognized by the author of the dissent in footnote 2 thereof, where he quotes *State v. Creech*, I.C.R. 779 (1977):

> The word "procedural" as used by this Court in the foregoing cases [State v. Yoder, 96 Idaho 651 and R.E.W. Construction Co. v. District Court, 88 Idaho 426] means the procedure by which the Idaho courts conduct their business, not the substantive law which governs the case. (Emphasis in the original).

It is argued that from 1881–1975 the right to jury trial was governed by I.C. § 10–301 which provided that:

> Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property, with or without damages, and with the assent of the court, in other actions in the manner following:
>
> 1. By failing to appear at the trial.
> 2. By written consent, in person or by attorney, filed with the clerk.
> 3. By oral consent, in open court, entered in the minutes.

The dissent asserts that in 1975 however, the legislature "obligingly allowed the Court to take over the field of court *procedure*," and that, *at that point*, the court made "a sweeping adoption of the F.R.C.P. [and] forsook the legislative requirement of a clearly expressed waiver in favor of providing that litigants would either alertly demand their right or lose it. I.R.C.P. 38." We note with interest that the effective date of I.R.C.P. 38 was November 1, 1958. I.R.C.P. 86. Therefore, not only was this

rule of procedure in effect well before 1977, its constitutionality was ruled on as early as 1965, *in light of the then effective I.C. § 10–301.*

## II

The determination of whether attorney fees are recoverable by the Andertons is governed by our recent holding in *Ada County Highway Dist. v. Acarrequi,* 105 Idaho 873, 673 P.2d 1067 (1983). The question there presented was whether a property owner in eminent domain proceedings is absolutely entitled to reasonable attorney fees as part of the just compensation due under the United States and Idaho Constitutions. We held that the awarding of such fees, while not mandatory under the definition of just compensation, is within the discretion of the court.

[A]n award of reasonable attorneys' fees to the condemnee in an eminent domain proceeding is a matter for the trial court's guided discretion and, as in other areas of the law, such award will be overturned only upon a showing of abuse. *Id.* at 873, 673 P.2d 1067.

[A]ttorneys' fees may be awarded to the condemnee without a showing and finding that the action was brought and pursued "frivolously, unreasonably or without foundation." *Id.* at 873, 673 P.2d 1067.

The factors for the trial court to consider in exercising its discretion include those set forth in *Acarrequi:*

Hence, we would deem that in considering the award of attorneys' fees to a condemnee, a condemnor should have reasonably made a timely offer of settlement of at least 90 per cent of the ultimate jury verdict. We also deem that an offer would not be timely if made on the courthouse steps an hour prior to trial. An offer should be made within a reasonable period after the institution of the action, to relieve the condemnee not only of the expense but of the time, inconvenience and apprehension involved in such litigation, and also to eliminate the cloud which may hang over the condemnee's

title to the property. Other factors which may be considered by the trial court are any controverting of the public use and necessity allegations; the outcome of any hearing thereon and, as here, any modification in the plans or design of the condemnor's project resulting from the condemnee's challenge; and whether the condemnee voluntarily granted possession of the property pending resolution of the just compensation issue. *Id.* at 873, 673 P.2d 1067.

■ Since the record is not complete as to the course of settlement negotiations, it may be necessary to reopen the case for presentation of testimony or affidavits on this issue.

Accordingly, we remand and instruct the trial court to determine whether the Andertons were the prevailing party in the action below, whether they should be awarded attorney fees within the *Acarrequi* guidelines, and if so, the amount of such fees, both in the trial court and on this appeal.

No costs allowed.

DONALDSON, C.J., and SHEPARD, J., concur.

BAKES, Justice, concurring in result:

I concur in that portion of the majority opinion affirming the judgment. However, as to the remand on the issue of attorney fees, such fees should be evaluated under I.R.C.P. 54(e). *Ada County Highway District v. Acarrequi,* 105 Idaho 873, 673 P.2d 1067 (1983) (Bakes, J., dissenting).

BISTLINE, Justice, concurring and dissenting.

I am able to embrace some but not all of the views set forth in the Court's opinion. Mainly, I believe that a constitutional right is being denigrated.

### I. Jury Trial

*Rueth v. State,* 100 Idaho 203, 596 P.2d 75 (1978), *Mitchell v. Flandro,* 95 Idaho 228, 506 P.2d 455 (1972), before it, and the entire history of eminent domain cases make it abundantly clear that an eminent domain proceeding is a *constitutional ac-*

*tion,* and not one created by the legislature, or by the courts. So postured it is beyond the power of the courts or of the legislature to deprive a property owner of his property without paying a fair and just compensation—in regard to which the landowner is *constitutionally* entitled to have fair compensation set by a jury. The legislature has never pretended that it could deny a landowner's rights to have that issue determined by a jury of his peers. What the legislature did provide was that in *any* case the right to a jury trial could be waived.

Without doubt the constitutional right to a jury trial can be waived. We recently applied that principle in a criminal case. *State v. Davis,* 104 Idaho 523, 661 P.2d 308 (1983) ("Without doubt the defendant had a constitutional right to a jury trial, but such, as with most constitutional rights, can be waived."). As the Clerk's Record in that case shows, the waiver was made *in open court,* both parties present and represented by counsel, the district judge and now Chief Judge of the Court of Appeals, the Honorable Jesse Walters, in jealous protection of the constitutional right to a jury trial, examined the defendant under oath as to his realization of the right being waived.[1]

Turning to the waiver of a jury trial in civil actions, it is in order to again examine the constitutional provisions of our Idaho Constitution that are applicable to civil actions:

> "The right of trial by jury shall remain inviolate; but in civil actions, three-fourths of the jury may render a verdict. A trial by jury may be waived ... in civil actions by the consent of the parties signified in such manner as prescribed by law. In civil actions the jury may consist

of twelve or of any number less than twelve upon which the parties may agree in open court."

At the time the Constitution was adopted, and for almost ten prior years, the territorial legislature had provided the manner by which a jury might properly be waived:

> "Trial by jury may be waived by the several parties to an issue of fact in actions arising on contract, or for the recovery of specific real or personal property, with or without damages, and with the assent of the court, in other actions, in manner following:
>
> "1. By failing to appear at the trial;
>
> "2. By written consent, in person or by attorney, filed with the clerk;
>
> "3. By oral consent, in open court, entered in the minutes."

Code of Civil Procedure, sec. 389 (1881). This same provision was carried over as statutory law following admission to statehood and became I.C. § 10–301. However, with the advent of court-promulgated rules, completely overlooked has been the constitutional requirement that in civil actions the right to jury trial must be waived by the consent of the parties, which must be signified in such manner as *may be prescribed by law.* Thus, art. 1, § 7 has a two-pronged requirement: (1) The parties must consent to a waiver, and (2) it must be in such manner as may be prescribed by law. The natural second inquiries are: (1) Can a party, here the Andertons, be said to have consented to a waiver when they did not do so, and (2) is there a manner prescribed *by law* by which they waived their right to a jury trial? It is beyond cavil that "prescribed by law," which appears many, many times in our Idaho Constitution, means a law enacted by the legislature.[2]

---

1. In *Davis, supra,* at 524, 661 P.2d 308, footnote 3 mentions the 1982 amendment to art. 1, § 7 of the Idaho Constitution, so that it now reads, as here pertinent to criminal cases:
   "A trial by jury *may be waived in all criminal cases by the consent of all parties,* expressed in open court, and in civil actions by the consent of the parties, signified in such manner as may be prescribed by law." (Emphasis added.)

2. Art. 21, § 16 of the Idaho Constitution reads:
   "**§ 15. Legislature to pass necessary laws.**—The legislature shall pass all necessary laws to carry into effect the provisions of this Constitution."
   Appendicized hereto is a hastily prepared and perhaps not all inclusive itemization of constitutional provisions using the language "provided by law."

As I have stated, there was such a law at the time the Constitution was adopted, and for many years thereafter until repealed in 1975. The Constitution having specifically entrusted to the legislature's lawmaking power the right and obligation to pass a substantive law setting out the manner in which a constitutional right may be waived, it should be entirely clear that the Court has usurped a constitutional legislative function in purporting to by mere rule of procedure provide that the right to jury trial is waived if a party or his attorney neglects to assert it at some stage in a lawsuit. This is purely the product of the Court's own ideas on the subjects. *Reductio ad absurdum*, the court could purport to amend its present rule to read that a "Plaintiff upon the filing of his complaint must demand his constitutional right to a jury trial or thereby waives it; a defendant must within 10 days after service demand his constitutional right to a jury trial or thereby waives it." It is all a matter of degree—what might be done as against what has been done. It would seem that where the Constitution confers certain

great rights upon the people who by that Constitution created self-government, that there ought not be by this Court placed upon them, at their peril, an obligation of demanding that which they gave themselves in their own Constitution. And if they are in a given circumstance willing to waive a given right, it should as with all waivers, as per definitive cases from this Court, be an intelligently, knowingly, and affirmatively made waiver.

The provisions of I.C. § 10–301 clearly spelled out that a jury trial might be waived only "by written consent, in person or by attorney, filed with the clerk," or "by oral consent, in open court, entered in the minutes," and, of course, "by failing to appear at trial." In sum, the legislature provided for an express waiver of the right to a jury, and this could include that right in a constitutional eminent domain proceeding. That statute governed waivers of jury trial from 1881 until it was repealed by the legislature in 1975, at which time the legislature obligingly allowed the Court to take over the field of court *procedure*.[3] The

3. In the first disposition of *State v. Creech*, 24 I.C.R. 779 (1977), a majority of the Court first held that Creech could be resentenced under procedures "prescribed by law" at a time subsequent to Creech's murder of the two hitchhikers. In dissent, Justice Bakes did a commendable job of pointing to the distinction between fundamental (constitutional) procedures and rights vis-a-vis court rules of procedure:

"The basic fallacy of the Court's reasoning is in equating the 'procedural' due process requirements of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as discussed in the recent United States Supreme Court death penalty cases, with the 'procedural' rules which we have held that this Court has authority to make. *See State v. Yoder*, 96 Idaho 651, 534 P.2d 771 (1975); *R.E.W. Const. Co. v. District Court*, 88 Idaho 426, 400 P.2d 390 (1965); *State v. Johnson*, 86 Idaho 51, 383 P.2d 326 (1963). *See also* I.C. § 1–212. The majority reasons that since the United States Supreme Court has stated that 'the issue ... involves the procedure employed by the State to select persons for the unique and irreversible penalty of death ...,' *ante* at 4, it was referring to the same 'procedure' which this Court was talking about in *State v. Yoder, R.E.W. Construction Co. v. District Court*, and *State v. Johnson* cases, *supra*. The word 'procedural' as used

by this Court in the foregoing cases means the procedure by which the Idaho courts conduct their business, not the substantive law which governs the case. The 'procedural' due process requirements of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution are rights guaranteed by the United States Constitution, which neither the Congress, the Idaho legislature, nor this Court can modify or repeal. As far as state action is concerned, they are immutable. When comparing the rule-making authority of this Court regarding procedure to be followed in conducting litigation in the courts of this state, with the procedural due process rights guaranteed by the United States Constitution, it is obvious that there is a qualitative and quantitative difference. *As contrasted with our court rule, the procedural due process rights guaranteed by the United States Constitution are matters of substantive law.*

"Therefore, when the majority quotes from *Woodson v. North Carolina*, that ' "the issue, like that explained in *Furman*, involves the procedure employed by the state to select persons for the unique and irreversible penalty of death," ' *ante* at 4, and then equates that 'procedure' with this Court's rule-making authority, it is engaging in an unjudicious play on words. Thus, the conclusion of the majority that this Court has the power, by rule, to

Court, in making a sweeping adoption of the Federal Rules of Civil Procedure, forsook the legislative requirement of a clearly expressed waiver in favor of providing that litigants would either alertly demand their right or lose it. I.R.C.P. 38. The Court's rule, while it has been generally considered that it "merely replaces" legislative direction, nonetheless should not be accepted as *constitutionally* capable of depriving a civil litigant, and especially an eminent domain condemnee, of his constitutional right to a jury determination of fair compensation. In my view, where the only issue triable by jury in a condemnation case is just compensation, the condemnee has that right until he expressly waives it.

However, *arguendo*, even if the condemnee is seen as being able to impliedly waive the right to jury trial in a condemnation proceedings, the courts should be careful to safeguard the right—not impinge upon it. I do not agree with the majority contention that the trial court did not here abuse its discretion when it failed to order a jury trial under Rule 39(b). I do not perceive that a demand for jury trial made eight days before trial was made on the eve of trial. At other times this Court has not so narrowly viewed time intervals. In *State v. LaMere*, 103 Idaho 839, 655 P.2d 46 (1982), this Court had no problem in upholding the adding of a second count in a criminal case one working day before trial.

In particular, I find it a bit whimsical that the Court falls back on the rule of literal construction of pleadings, I.R.C.P. 8(f) in order to say, as it does, that the Andertons were required to demand a jury on the filing of their first document—which, if anything, amounted at best only to a challenge to the right of the city to condemn their land. The problem with this proposition is that there never was a right

to a jury trial on that issue. *Portneuf Irrigating Co. v. Budge*, 16 Idaho 116, 100 P. 1046 (1909), reaffirmed in *Mitchell v. Flandro, supra*, both of which cases were relied upon in *Rueth v. State, supra*.

For the sake of clarity, I here set forth the chronology of pleadings in this case. On October 5, 1979, the City filed the complaint herein alleging the right of eminent domain. On December 4, 1979, the Andertons, *pro se*, filed a 'remarkable' affidavit neither admitting nor denying any allegations of the complaint but declaring that the attempted acquisition was a fraud; and that "the City of Pocatello is unable to pay for the property for the simple reason that there is no money identifiable as such in circulation in the United States today." R., p. 11. Although this affidavit (which to purely legal minds would appear foolish) was entitled "Answer to Summons and Complaint," obviously it was not such, and this Court has often said it looks to the substance of a document in order to determine what it actually is. Over a year later, on January 15, 1981, the Andertons filed an "Answer to Summons and Complaint and Counter-Claim," this time admitting and denying the specific allegations of the complaint and setting forth counterclaims. On July 6, 1981, the City's complaint became superseded by an amended complaint. The Andertons in turn filed their answer to the amended complaint on August 17, 1981. This was the final pleading. Nonetheless the majority asserts that "[t]he final pleading directed to an issue triable by jury was the answer filed by the Andertons in December, 1979." Thus, the Court holds that the "right to demand a jury trial expired in December 1979 and was not thereafter revived." In so holding, the Court avoids determining whether the City's Note of Issue dated December 30, 1980, which stated a jury trial was requested, sufficed to

---

impose a death penalty and to establish the procedure for employing it is a grossly unwarranted expansion of the rule-making authority of this Court." (Emphasis added.)

Noting that I have above underscored "As contrasted with our court rules, the procedural due process rights guaranteed by the United States Constitution are matters of substantive law"—

with which all must agree—it is an equal truism that: As contrasted with our court rules, the procedural due process rights guaranteed by the Constitution of the State of Idaho are also matters of fundamental substantive law. One of these rights, and important as any, is the right to a jury trial.

constitute a request for a jury trial, keeping in mind that in point of time it preceded the amended pleadings, and keeping in mind that to any lay person and even some lawyers it suggests a jury trial, and in fact could have formed the basis of a strong City argument that it had indeed signified its desire for a jury trial—had the City decided that it preferred a jury.

In asserting that the right to demand a jury trial expired in December of 1979, the majority states that:

> "[A]lthough it is true that an amended or supplemental pleading which raises a new issue revives the right to demand a jury trial as to that new issue, *State ex rel. Symms v. Thirteenth Judicial District*, 91 Idaho 237, 419 P.2d 679 (1966), that rule is of no assistance to the Andertons here. No new issues were raised by any of the subsequent pleadings."

If my readings of *Symms* serve me correctly, the Court there held that the ten-day time limit set forth in I.R.C.P. 38(b) starts to run from the "last pleading directed to such issue" which the Court defined as the last pleading in which an issue is addressed. Thus, the Court held that if a subsequent pleading addressed issues raised in the initial answer and complaint, the ten-day period for those issues begins to run from the latter of the subsequent pleadings which addresses those issues. The Court quoted with approval the following statement:

> " 'Where the issues raised by the counterclaim and reply are essentially similar to those in the complaint, a jury demand, timely as to the former but not the latter, will extend to *all the issues in the case*.' 36 FRD at 45."

91 Idaho at 240, 419 P.2d 679 (emphasis added).

The Court then concluded that:

> "Bennetts and Panters, in their counterclaims, not only again raised the issues framed by the complaint and answer with specific allegations of damages to the remaining lands, but additionally set out alleged fraudulent claims for which they sought general, special and exemplary damages. That state of the pleadings constrains us to the view that 'the last pleading directed to such issue' in each case,—that is, the issue of damages accruing by reason of the State's condemnation—was the reply to the counterclaim." *Supra.*

The last pleading directed to the issue of damages was the answer filed by Andertons to the City's amended complaint on August 17, 1981. Thus, the ten-day period under I.R.C.P. did not run until August 27, 1981. The City's Note of Issue was filed long before this time, on December 30, 1980. Thus, contrary to the majority's conclusion that "the right to demand a jury trial expired in December 1979 and was not thereafter revived," the right to a jury trial did not expire until a full year and a half later, and, in fact, may be seen as having been exercised by the City.

The Court does not answer the question of whether the Note of Issue constituted a demand for a jury trial within the meaning of I.R.C.P. 38(b) based on their erroneous conclusion that it came too late. The Court labels the Note a "request" which I find merely a semantical exercise which goes nowhere. That written document certainly evidenced the thought that there was either an implied or implicit agreement or understanding that a jury would be utilized. A suggestion that there be a jury trial having been made well within the time limits imposed by I.R.C.P. 38(b) the trial court erred in not ascertaining whether the parties wanted to expressly waive a jury, and, if not, then erred in not submitting the issue of compensation to a jury. Whatever suggests a nonwaiver of a jury trial, whether by request, demand, prayer, or simply desire, once having been made, there is no obligation to reiterate it over and over again. From that time on only an express waiver or stipulation should suffice to extinguish the right. Their request made on what the Court sees as the eve of the trial was not necessary to retain their right. If the district court was unsure whether the City's Note of Issue constituted a "demand" for a jury trial, that doubt

should have been resolved in favor of awarding a jury trial. As stated in *Neal v. Drainage District No. 2*, 42 Idaho 624, 248 P. 22 (1926) "a waiver of jury trial will not be implied in doubtful cases." The district court resolved the doubt in this case against jury trial and so committed an abuse of discretion.

## ADDENDUM

The majority has responded to the foregoing declaring that the problem which I have addressed was passed upon by this Court twenty years ago in *R.E.W. Construction Co. v. District Court*, 88 Idaho 426, 400 P.2d 390 (1965), wherein, as the majority puts it, "we adopted the view of the Illinois Supreme Court." Today's majority correctly quotes from one of the Illinois cases which guided that 1965 opinion and correctly notes that foregoing footnote 2 discloses my prior awareness of the *R.E.W.* opinion.

I admit to such awareness, and in fact have read and re-read that opinion many times. The opinion read well enough, but about the third or fourth time through it, the realization began to materialize that, although the pertinent provisions of the Idaho Constitution, art. 1, § 7 are set out, the opinion does *not* set out the provisions of the constitutions of Illinois, Iowa, and Florida. One sentence in *R.E.W.*, 88 Idaho at 441, 400 P.2d at 399, sets out one sentence of the Iowa constitution—"The right of trial by jury shall remain inviolate." My reading of the *R.E.W.* opinion left me with the definite impression that that sentence was not all of the jury trial section of Iowa's constitution, and, with the opinion drawing on Iowa precedent, it was only logical to expect that the Iowa constitution would be found to contain language similar to Idaho's which specified that waiver "in civil actions by the consent of the parties, signified in such manner as may be *prescribed by law*."

Alas, although there is more to the Iowa constitution than the *R.E.W.* opinion discloses, there is nothing in it which even vaguely resembles the Idaho Constitution other than that first sentence—which is identical to the first sentence of art. 1, § 7 of our Idaho Constitution. The Iowa constitutional provision in full provides:

"Sec. 9. The right of trial by jury shall remain inviolate; but the General Assembly may authorize trial by a jury of a less number than twelve men in inferior courts; but no person shall be deprived of life, liberty, or property, without due process of law."

The Illinois right-of-jury provision bears no resemblance whatever to the Idaho provision other than the first sentence, which again is identical, and comprises the entire section: "The right of trial by jury shall remain inviolate." *R.E.W.* seemingly places some reliance on the Florida constitution, which I say, as with Illinois, is not set out in *R.E.W.*, but provides only: "The right of trial by jury shall be secure to all and remain inviolate. The qualification and the number of the jurors, not fewer than six, shall be fixed by law."

The validity of *R.E.W.* is thus seen as highly questionable. Obviously the framers of the Idaho Constitution did not pattern art. 1, § 7 upon the right-of-jury trial provisions from Illinois, Iowa, or Florida. Accordingly, the cases from those jurisdictions have no precedential value, and cannot be said to even remotely sustain this Court's *R.E.W.* decision.[4] Moreover, a close reading of *R.E.W.* will show that the Iowa case, *Schloemer v. Uhlenhopp*, 237 Iowa 279, 21 N.W.2d 457 (1946), was simply "relying upon the Illinois case of *Stephens v. Kasten*, 383 Ill. 127, 48 N.E.2d 508 (1943)." 88 Idaho at 426, 400 P.2d at 390. And why not? The two mid-western states are seen as having identical provisions, and hence the Illinois case was sound precedent for the Iowa court. It did not properly serve as precedent for an Idaho court ex-

---

4. Based upon my experience on the Court, I reach the conclusion that Justices McQuade, Knudson, Taylor and Smith indulged in the assumption that the constitutions of Illinois, Iowa, and Florida were similar to Idaho's.

amining an entirely different provision in an Idaho constitution.

The *R.E.W.* opinion quotes from an Illinois intermediate court of appeals opinion, *Roszell v. Gniadek*, 348 Ill.App. 341, 109 N.E.2d 222 (1905), which merely followed *Stephens v. Kasten* an added nothing. But *R.E.W.* did not quote any language from *Stephens v. Kasten,* itself, which is most unusual. This becomes apparent in noting that the Illinois court was of the view that the Illinois provision simply guaranteed the right *as it had existed in Illinois under the common law:*

> "None of the constitutional provisions define the right of trial by jury. The provisions in each, however, mean the same thing, namely, the right of trial by jury as it existed at common law and which was enjoyed at the adoption of the respective constitutions."

*Stephens v. Kasten,* 48 N.E.2d at 510.

Art. 1, § 7 of the Idaho Constitution does *not* embody the right to jury trial as it existed under the common law. Anyone thinking otherwise would do well to read the extensive discussions and debates of the Constitutional Convention, Vol. I, pp. 146–61 and 209–60. Proponents argued for a provision similar to those from those states which simply preserved the right as it did exist under the common law—the concensus of those at the convention being that the common law required a unanimous jury of twelve in order to render a verdict in a civil case. Others argued that the required number should be left to the legislature, i.e., to be fixed by law, and that it be initially set at three-fourths, subject to legislative change. Others urged that the Constitution itself should set the number without any provision for legislative change. This view prevailed. Our Idaho constitutional provision is thus seen to have nothing to do with the provisions of the constitutions of Iowa, Florida and Illinois. The supreme courts of those states, in turn, were never called upon to pass judgment on a constitutional provision which did mention waiver, and did provide that the legislature would prescribe the manner in which a waiver might be made.

Additional comment may be helpful in understanding *R.E.W.* · That opinion did not address the Constitution's specific delegation to the legislature of the fixing of the manner in which a jury might be waived, other than to note that the constitution was so worded. That opinion declined to mention that the constitutional provisions in Illinois, Iowa, and Florida, were nothing like ours, and then proceeded to base a decision on cases from those states without addressing the real issue, the issue of paramount authority *under the constitution.* This is so, as the original record in the Clerk's office shows, because the petitioner's brief in *R.E.W.* was more concerned with challenging discovery procedures under the newly adopted "Federal" rules of civil procedure [5] than in arguing the waiver

---

**5.** "My personal feelings concerning the rules of civil procedure in the State of Idaho are no secret. During those early preliminary meetings of the bar back in 1956 and 1957 I vehemently protested the adoption of such a system of rules. It is probably no secret that during the last legislative session I prepared a bill for introduction in the legislature to recall that undelegable delegation of power which had been previously accomplished by Chapter 90 of the 1941 Session Laws. I can further say that I have spoken out concerning these rules and have urged other members of the bar to join in an attempt to restore our practice of the law to where it was prior to 1958 and each time I am frank to say that so many of the members of the bar have expressed the attitude that the Supreme Court of the State of Idaho would never declare invalid the rules which they promulgat-

ed. I refuse to believe that such would be the attitude of our Supreme Court if the grounds for challenge are valid.

"Every legislative enactment is presumed to be constitutional until somebody questions it. Chapter 90 of the 1941 Session Laws, therefore, was presumed to be constitutional and when certain groups and members of the bar of the State of Idaho prevailed upon the Supreme Court to promulgate the Idaho Rules of Civil Procedure it was perfectly proper and presumptively legal for the Supreme Court to make its promulgation pursuant to the presumptively constitutional delegation of power contained in Chapter 90 of the 1941 Session Laws.

"But now we have a challenge to the legality and constitutionality of Chapter 90 of the 1941 Session Laws and I have the confidence that the Supreme Court will evaluate the constitutionali-

of the jury issue, concerning which the brief does nothing more than utilize art. 1, § 7, as a Point and Authority, with the words "by law" emphasized by underscoring. Such was the total argument.

The Attorney General represented the respondent district court. Completely avoiding any mention of the Constitution having placed with the legislature the responsibility for prescribing the manner of waiver, the respondent's brief in *R.E.W.* declared that our Idaho constitutional provision "simply provides that the right to trial by jury .... Art. 1, § 7 is synonymous with the provision of the United States Constitution relating to trial by jury shall remain inviolate ...," and cited this Court to the *Schloemer* case and mentions its discussion of *Stephens v. Kasten*, adding mention also of the Florida case. The brief did not furnish the Court with the constitutions of Iowa, Illinois, or Florida— or of any of the many western states, and Arkansas and Minnesota (to name just a few), which do have constitutional provi-

sions identical or almost identical to art. 1, § 7 of the Idaho Constitution.

Nothing in the briefs presented to the Court in *R.E.W.* gave any guidance on a constitutional question of the greatest magnitude, and nothing in the opinion which four members joined gave the slightest hint that there was no similarity to be found in comparing art. 1, § 7 of the Idaho Constitution to the constitutions of Iowa, Illinois, and Florida.

In sum, this important issue has never been properly presented or decided. *R.E.W.* should be overruled.[6] The Idaho Constitution should prevail. The Andertons should have a jury trial.

---

ty of Chapter 90 of the 1941 Session Laws with the same impartiality as it would approach the evaluation of any other legislative enactment which is challenged upon the basis of unconstitutionality, even if a holding of Chapter 90 to be unconstitutional resulted in nullification of the rules of civil procedure, which have been promulgated by the Supreme Court pursuant thereto, and I demonstrate this confidence by making this challenge."
*R.E.W. Construction Co., Inc. v. District Court,* Brief in Support of Petition for Writ of Prohibition and for Writ of Mandamus, pp. 13–14.

6. There are some passages in *R.E.W.* which, putting aside this Court's failure to adhere to the unmistakable language of art. 1, sec. 7, should guide the Court to a decision favorable to Anderton's constitutional rights:
"Along the same vein, it is to be pointed out that the requirement that the rules of civil procedure be liberally construed to secure just determination of any particular case is equally applicable to the provisions of I.R.C.P. 39.
" 'The rules are designed to achieve substantial justice and the court has discretion to relax the time requirement for demanding a jury trial and on motion to grant a jury trial to a party who has waived it by failing to make a timely demand.' 2B Barron & Holtzoff, Federal Practice and Procedure, 66 § 892.
Where a jury trial is desired after a time to demand a jury as of right has expired, a motion to the Court under Rule 39, rather

than service of a demand under Rule 38 is the proper course. *Roth v. Hyer* (C.C.A. 5th 1944) 142 F.2d 227, cert. denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573. As a footnote 22 supp. 2B Barron & Holtzoff, § 892, the authors have stated:
" 'The view stated in the text, that technical insistence upon imposing a penalty for default by denying a jury trial is not in the spirit of the rules, is supported by the enlightening Note, 1962, 47 Iowa L.Rev. 759, which demonstrates that in recent cases courts have been reluctant to use their powers under Rule 39(b) with the result that many litigants have been denied a jury trial through mere inadvertence. The commentator concludes, at 765, that motions under Rule 39(b) for jury trial where no timely demand was made should be granted in that absence of any showing of delay to the nonmoving party in transferring the case to the jury docket, or that judicial time will be wasted because it is too late to fill the vacancy left on the nonjury docket.'
It is essential, that upon a request for trial of issues by a jury, even after the time for demand for jury has elapsed, that the trial court liberally exercise its discretion in this regard to carry out the designed purpose of the Idaho Rules of Civil Procedure. See Annot.: 64 A.L.R.2d 506."
88 Idaho at 443, 400 P.2d at 407.