878 P.2d 762

**FARMERS NATIONAL BANK, Plaintiff–Counterdefendant–Respondent,**

v.

**Charles P. SHIREY and Shauna Shirey, Husband and Wife, Defendants–Counterclaimants–Appellants.**

No. 20379.

Supreme Court of Idaho, Boise, February 1994 Term.

June 20, 1994.

Rehearing Denied Aug. 10, 1994.

Cosho, Humphrey, Greener & Welsh, P.A., Boise, for appellants. Nancy Jo Hopkins and Joseph M. Meier, argued.

Hepworth, Nungester & Lezamiz, Twin Falls, for respondent. John C. Hohnhorst, argued.

CHAS. F. McDEVITT, Chief Justice.

Appellants, Charles and Shauna Shirey ("Shireys"), appeal from an order of the district court granting summary judgment in favor of respondent, Farmers National Bank (the "Bank"). The Bank sought and obtained a declaratory judgment from the district court declaring its security interest in specific property to be superior to that of the Shireys. The Bank also successfully persuaded the district court to dismiss the Shireys' counterclaims of breach of contract, conversion, intentional interference with a contractual relationship, and fraud, based on the doctrine of *res judicata.* The Shireys appeal the order of summary judgment, asserting that a genuine issue of material fact exists as to which party's security interest is superior. The Shireys also appeal the order dismissing their counterclaims, challenging the district court's reliance on the doctrine of *res judicata* as the basis for its ruling.

## BACKGROUND

In August 1984, Joseph and Carvel Allen (the "Allens"), and two corporate entities entered into an agreement with the Bank to secure a loan of $185,000 from the Bank, citing as collateral certain cattle and farm equipment to be purchased from the Shireys with the borrowed funds. The three parties met at the Bank on September 6, 1984, to execute the "Dairy Sales Agreement." The sales agreement contained a provision stating that the loan was to be secured by "a first lien upon the cattle and equipment herein

conveyed. Accordingly it is agreed between the parties that Sellers' security interest in said cattle and machinery shall be subordinate to that security interest of the Bank issued to secure the above described loan." The Bank properly filed a financing statement covering both the cattle and the equipment on September 27, 1984. The Shireys' financing statement covering the equipment was filed on October 1, 1984.

Over the next three years, the Bank extended more credit to the Allens. By October 1987, the Allens' total debt to the Bank was approximately $560,000. On September 23, 1987, the Allens notified the Bank, which in turn notified the Shireys, of their intent to cease payment on the loan and to abandon the dairy operation. Upon receiving a written release of the collateral from the Allens, the Bank took temporary possession of the collateral.

The Allens filed Chapter 7 bankruptcy in October 1987, and L.D. Fitzgerald was appointed trustee. When the Bank tendered possession of the collateral to the trustee, the trustee requested the Bank to retain possession pending distribution. On October 19, 1987, the Bank submitted written creditors' claims to the trustee, identifying itself as a secured creditor entitled to receive $560,958. The Shireys filed a similar claim on November 1, 1987, identifying themselves as secured creditors entitled to $306,184.

In order to expedite liquidation of the collateral still in its possession, the Bank contacted the Allens and the trustee and proposed the execution of stipulations to relieve the Bank from the 11 U.S.C. § 362 automatic stay invoked by the Chapter 7 filing. The Bank, the Allens, and the trustee executed and signed the stipulations, which were then submitted to the bankruptcy court for approval on November 23, 1987. The court approved the stipulations, lifting the automatic stay and authorizing the Bank to sell the collateral.

On November 25, 1987, the Bank notified the Shireys of the court's action and the Bank's intention to sell the collateral. The Shireys' attorney during the bankruptcy proceedings, Mr. Decker, admitted having received the notification as well as the stipulations and order at least three weeks before the sale. The Shireys submitted no objection to the sale to the bankruptcy court, nor did the Shireys ever submit their own request for relief from the stay until after the collateral was sold.

The cattle and equipment were sold at auction on December 11 and 12, 1987. The sale netted $272,376 available for application to the $560,000 debt owed to the Bank. After receiving notice that the Shireys claimed an interest in the collateral, the Bank set aside approximately $60,000 in a trust account, the balance remaining due from the Allens to the Shireys according to the escrow, pending resolution of the claim. On February 1, 1988, the Shireys submitted two additional creditors claims to the bankruptcy court identifying themselves as secured creditors entitled to $306,704. The trustee objected to their claims. On April 24, 1989, the Shireys moved to continue a hearing set to entertain the trustee's objection in order to amend their secured claim to an unsecured claim. On May 22, 1989, the court sustained the objection, but allowed the Shireys' claim in its entirety as a general unsecured claim.

Unable to resolve the dispute concerning the $60,000, the Bank initiated this action in the district court, Judge Becker presiding, on April 1, 1988. The Bank sought declaratory relief that its security interest was superior to that claimed by the Shireys, entitling it to the $60,000, and injunctive relief to enjoin the Shireys from interfering with the quiet possession of the collateral sold at the auction. In their answer, filed June 10, 1988, the Shireys counterclaimed, claiming a superior interest in the collateral, breach of fiduciary duty, and violation of the Consumer Protection Act, alleging that the Bank committed conversion and fraud. The Bank filed a reply on June 21, 1988.

On April 24, 1989, after retaining new counsel, the Shireys filed a motion to amend the counterclaim. The court granted the motion over the Bank's objection. The amended counterclaim added claims of intentional misrepresentation, deceit, breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with a

business relationship, requested damages for lost profits, and contained a demand for jury trial pursuant to I.R.C.P. 38(b). On May 11, 1989, the Shireys were allowed to file another amended counterclaim, and yet another on January 23, 1990. Both claims contained a demand for jury trial. In its reply to the amended counterclaims the Bank continuously denied that the Shireys were entitled to a jury trial. Finally, on April 20, 1990, the Bank moved to strike the demand for jury trial in the amended counterclaim. The district court denied the motion and set a date for jury trial.

On January 7, 1991, the Bank moved for summary judgment on the issue of the priority of the competing security interests. The district court granted the motion, ruling that the Bank had priority as a matter of law because its financing statements were filed prior to those filed by the Shireys. The district court extended the priority to include after-acquired property funded by the future advances of over $500,000 under I.C. § 28–9–312(7). Contemporaneously, the Bank moved for summary judgment on the counterclaim or, in the alternative, to dismiss the counterclaim. At the hearing on the motion, the Shireys stipulated to dismissal of the bad faith and breach of fiduciary duty claims, as well as the claim based on the Consumer Protection Act. The district court denied the Bank's motion, ruling that genuine issues of material fact precluded summary judgment or dismissal.

On March 2, 1991, the first day of the jury trial, the. court suppressed the admission of the "problem loan reports" generated by the Bank and offered by the Shireys. Subsequently, Judge Becker was placed on administrative leave and succeeded by Magistrate R. Barry Wood, district judge *pro tem.* On the Bank's motion, Judge Wood reconsidered and reversed Judge Becker's order denying the Bank's motion to dismiss the Shireys' claim of entitlement to lost profits. In the same memorandum decision, the court, on its own initiative, ruled that the Shireys had waived their right to a jury trial. Upon the Shireys' motion, the court also reconsidered and reversed Judge Becker's prior evidentiary ruling excluding the problem loan reports, but refused to reconsider Judge Becker's summary judgment on the issue of priority.

Upon a second motion for reconsideration by the Bank, Judge Wood reversed the prior order on the counterclaim, granting summary judgment to the Bank on the conversion claim and intentional interference claim. In the same memorandum decision, the court granted the Bank's motion for summary judgment on the third amended counterclaim based on the doctrine of *res judicata,* ruling that orders previously entered in the United States Bankruptcy Court were entitled to *res judicata* effect and served to bar the counterclaim. This final order and judgment resolved the remainder of the litigation. Subsequently, the district court awarded costs and attorney fees to the Bank. The Shireys appeal Judge Becker's order granting summary judgment on the issue of priority, Judge Wood's order granting summary judgment on the counterclaim, and the award of attorney fees.

This Court addresses the following issues on appeal:

I. Whether Judge Wood abused his discretion in reconsidering the legal rulings previously made by Judge Becker.

II. Whether the district court erred in dismissing the counterclaim based on the doctrine of *res judicata.*

III. Whether the district court abused its discretion in reconsidering and denying, *sua sponte,* appellants' demand for a jury trial.

IV. Whether the district court erred in granting summary judgment in favor of the Bank on the counterclaim issues of conversion, lost profits, and intentional interference with contract.

V. Whether the district court erred in granting partial summary judgment to the Bank on the issue of the priority of the competing security interests.

VI. Whether the district court erred in awarding costs and attorney fees to the Bank.

## STANDARD OF REVIEW

▪ When faced with an appeal from summary judgment, this Court must determine whether the pleadings, depositions, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any

material fact, and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c). *Harris v. Dep't of Health & Welfare,* 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1992); *G & M Farms v. Funk Irrig. Co.,* 119 Idaho 514, 516–17, 808 P.2d 851, 853–54 (1991). The non-moving party is to be given the benefit of all favorable inferences which reasonably might be drawn from the evidence, and all doubts are to be resolved against the moving party. The motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom and if reasonable people might reach different conclusions. *Harris,* 123 Idaho at 298, 847 P.2d at 1159.

## ANALYSIS

### I.

### JUDGE WOOD HAD THE AUTHORITY TO RECONSIDER THE PRIOR RULINGS OF JUDGE BECKER UNDER I.R.C.P. 11(a)(2)(B)

■ The Shireys assert that the doctrine of "law of the case" prohibited Judge Wood from reconsidering an issue previously decided by Judge Becker, unless Judge Becker's decision was clearly erroneous. We disagree. Under Rule 11(a)(2)(B) of the Idaho Rules of Civil Procedure, a court may reconsider its legal rulings before a final judgment has been entered. In this case, Judge Wood reconsidered the rulings of Judge Becker before the entry of a final judgment, and, therefore, acted with authority under the rule. The doctrine of "law of the case" is inapposite to these proceedings. *Cf. Frazier v. Neilsen & Co.,* 118 Idaho 104, 106, 794 P.2d 1160, 1162 (Ct.App.1990) (doctrine of "law of the case" similar to doctrine of *stare decisis* protecting against re-litigation of settled issues in different appellate stages of case).

### II.

### THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON THE COUNTERCLAIM IN FAVOR OF THE BANK BASED ON THE DOCTRINE OF *RES JUDICATA*

The Shireys challenge the trial court's ruling that the bankruptcy order and the proceedings that precipitated the order are sufficient to invoke the application of the doctrine of *res judicata* as a bar to their third amended counterclaim. Specifically, the Shireys contend that the Bank has not demonstrated that the bankruptcy order meets the three requirements of *res judicata,* as set out in *Magic Valley Radiology, P.A. v. Kolouch,* 123 Idaho 434, 437, 849 P.2d 107, 110 (1993), including "party identity," "identity of issues," and "final judgment."

### A. Identity of Parties

■ The Shireys assert that they were not a party or in privity with a party in the bankruptcy litigation. We hold that the Shireys were privities to the bankruptcy action as registered creditors represented by the trustee, a party to the stipulation and order relieving the Bank from the automatic stay. *See In re Met–L–Wood Corp.,* 861 F.2d 1012, 1017 (7th Cir.1988); *In re Dominelli,* 820 F.2d 313, 317 (9th Cir.1987); *In re Medomak Canning,* 922 F.2d 895, 901 (1st Cir.1990).

In *In re Met–L–Wood Corp.,* 861 F.2d 1012 (7th Cir.1988), the circuit court applied the doctrine of *res judicata* to bar a fraud challenge by the trustee to a bankruptcy court order authorizing the sale of assets in a prior Chapter 11 case to the extent that the unsecured creditors were represented in the prior case. The court also ruled that the challenge was not barred to the extent that it was on behalf of creditors not represented in the prior case. *Id.* at 1017. The court based its holding on the simple rule that a trustee is the creditors' representative and a judgment for or against the trustee is *res judicata* in a suit on the same claim by a creditor, provided that no conflict of interest made the trustee's representation inadequate. In *In re Dominelli,* 820 F.2d 313, 317 (9th Cir.1987), the ninth circuit ruled that a trustee in a Chapter 7 proceeding was in privity with a junior lienholder and that a stipulation signed by the trustee on behalf of the bankrupt estate and approved by the bankruptcy court waiving a usury defense to a senior lienholder's claim was binding on the junior lienholder. The court held that *res judicata*

barred the junior lienholder's subsequent action for damages based on the same usury defense against the competing secured creditor. *Id.* In *In re Medomak Canning*, 922 F.2d 895 (1st. Cir.1990), the court held that a compromise agreement between the trustee, as the fiduciary representative of the creditors, and adverse creditors, subordinating appellant creditors' interest in a secured item of property and authorizing the sale of the property, was binding on the appellants. The court stressed that the appellants had notice of the hearing on the compromise and objected thereto. The court stated that privity may be established by identification of interests, even where representation of those interests is not authorized. *Id* at 901. The court held that the doctrine of *res judicata* barred the appellants from asserting any claim to the property at a separate adversary hearing to determine priorities. *Id.*

The purpose underlying the invocation of privity between a trustee and creditors is illuminated in *Sanders Confectionery Products v. Heller Financial*, 973 F.2d 474 (6th Cir.1992). The *Sanders* court began by stating that creditors are to be considered parties to a bankruptcy court order for *res judicata* purposes. *Sanders*, 973 F.2d at 480–81. The court recognized that the bankruptcy code contains a strong preference for final resolution of all claims involving the debtor, and that releasing creditors "from the bonds of *res judicata* would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims against the debtor." *Id.* at 481.

Based on the above analysis it is clear that the fact that the Shireys did not sign the stipulation relieving the Bank from the automatic stay is irrelevant because the trustee, with whom they were in direct privity, signed it.

*B. Identity of Subject Matter*

■ The Shireys also assert that their counterclaims in this cause of action, grounded in fraud, do not arise out of the same transaction as the claims in the bankruptcy action, and, therefore, preclude application of *res judicata* for lack of subject matter identi-

ty. We hold that the claims in both actions arise out of the same transaction, thus satisfying the second element predicating the invocation of *res judicata.*

In *Diamond v. Farmers Group*, 119 Idaho 146, 804 P.2d 319 (1990), this Court reaffirmed the "transactional" approach to claim preclusion, stating "[a] valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose". *Diamond*, at 150, 804 P.2d at 323. "The 'sameness' of a cause of action for purposes of application of the doctrine of *res judicata* is determined by examining the operative fact underlying the two lawsuits". *Id* at 149, 804 P.2d at 322. In this case, the operative facts underlying the bankruptcy order and the instant cause of action are comprised in the dairy sale agreement. In the bankruptcy case, the Bank petitioned for relief from a stay imposed by the filing of a bankruptcy petition by the Allens in order to exercise their rights against the collateral as defined in the dairy sale agreement. In the instant case, the Shireys seek to enforce their alleged rights against the collateral as defined in the dairy sale agreement. Given that the underlying operative facts are the same for both cases, all claims that could have been brought in the first action are now barred assuming, of course, the "identity of parties" and "final judgment" elements are also met.

■ The claims contained in the Shireys' third amended counterclaim should have been raised in the bankruptcy court. The bankruptcy proceedings themselves inherently posed the very issue at the heart of the Shireys' counterclaim. The fundamental purpose of a Chapter 7 bankruptcy is to identify the creditors, determine the amounts due, ascertain if the claims are secured or unsecured and their priority, and dispose of the assets of the estate accordingly. Any claim by the Shireys that their interest was superior to the Bank's or wrongfully denied by the Bank was uniquely addressable to that forum.

■ Regarding the Shireys' claims for fraudulent misrepresentation and conversion,

the law in Idaho is that an action for relief on the grounds of fraud will not be "deemed to have accrued until discovery, by the aggrieved party, of the facts constituting the fraud." I.C. § 5–218(4). "[A]ctual knowledge of fraud will be inferred if the allegedly aggrieved party could have discovered it by the exercise of due diligence." *Kawai Farms v. Longstreet*, 121 Idaho 610, 614, 826 P.2d 1322, 1326 (1992), quoting *Nancy Lee Mines, Inc. v. Harrison*, 95 Idaho 546, 547, 511 P.2d 828, 829 (1973). More specific to the facts of this case, before a claim of fraud can be dismissed on a motion for summary judgment based on *res judicata*, a court must first answer the question of whether there is more than one conclusion as to whether the party alleging the fraud has exercised due diligence in discovering the fraud. *Id.* See also *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 437, 849 P.2d 107, 110 (1993). It is clear that the Shireys did not exercise due diligence in discovering the nature of the Bank's action in the bankruptcy court. Therefore, no material question of fact exists precluding the granting of summary judgment. *Cf. Kawai Farms*, 121 Idaho at 614, 826 P.2d at 1326. The Shireys argue that the facts did not come to light until after the bankruptcy court order issued, and could not have been discovered by the Shireys prior to that date. However, the record shows that the Shireys were notified of the stipulation agreement prior to execution of the foreclosure and should have availed themselves of the opportunity at that time to contest such execution in the bankruptcy court.

*C. Finality of Judgment*

 The Shireys also argue that the application of *res judicata* is inappropriate because the precise point or question in this action was not finally resolved and decided in the bankruptcy action. *See Marshall v. Underwood*, 38 Idaho 464, 466, 221 P. 1105, 1105 (1923). This is not the proper test for the "finality of judgment" element predicating the application of the doctrine of *res judicata*. Well-established law in Idaho states that

> [I]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and

privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

*Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922) (quoted with approval in *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 436–37, 849 P.2d 107, 109–10 (1993); *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 614, 826 P.2d 1322, 1326 (1992), and *Diamond v. Farmers Ins.*, 119 Idaho 146, 148, 804 P.2d 319, 321 (1990)). The rule pronounced in *Marshall* in the text cited by the Shireys was later clarified in *Village of Heyburn v. Security S. & T. Co.*, 55 Idaho 732, 756, 49 P.2d 258, 269 (1935) (Budge, J., dissenting). Justice Budge distinguished cases where the issue arises upon the same claim or demand from those based upon a different claim or demand. In the former, in an action between the same parties upon the same claim or demand, the *Joyce* rule applies. In the second type, an action between the same parties upon a different claim or demand, the *Marshall* rule applies, and the judgment in the prior action operates as an estoppel only as to those precise matters which were in fact decided. *Id.*

The ninth circuit has defined a final bankruptcy decision as "one that 'ends the litigation on the merits and leaves nothing for the court to do but [execute the] judgment'." *In re Landmark Hotel & Casino, Inc.*, 872 F.2d 857, 860 (9th Cir.1989) (quoting *In re Martinez*, 721 F.2d 262, 265 (9th Cir.1983)). That court further has held that an order that grants relief from the automatic stay is final for purposes of appeal. *In re Kemble*, 776 F.2d 802, 805 (9th Cir.1985). *See also In re American Mariner Indus., Inc.*, 734 F.2d 426, 429 (9th Cir.1984) (an order that denies relief from the automatic stay is final for purposes of appeal).

 In this case, the order for relief from the automatic stay in favor of the Bank clearly qualifies as a final order as defined by federal case precedent. Moreover, the central thesis underlying all of the Shireys' claims in the counterclaim was that the

Bank's security interest in the collateral was inferior to the Shireys' and by selling the collateral the Bank violated the Shireys' rights. This theory, which challenges the disposition of the security interests made by the bankruptcy court by lifting the stay, is a core matter which could have and should have been resolved by the bankruptcy court. The Shireys' claim to the collateral and counterclaims that the Bank breached an agreement with the Shireys concerning the collateral, wrongfully converted the collateral, and violated the Shireys' rights, should have been litigated in the bankruptcy court before the Bank was relieved of the stay or, at the very latest, before the Bank sold the collateral, and thus are barred under the doctrine of *res judicata*. The Shireys' avenue for relief leads to the federal district court in the form of an appeal from the bankruptcy court order, not to our doors.

## III.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN STRIKING THE SHIREYS' DEMAND FOR A JURY TRIAL

█ The trial court raised the issue of the right to a jury trial *sua sponte* pursuant to rule 39(a) of the Idaho Rules of Civil Procedure. The court found that neither party made a timely demand for a jury trial under rule 38(b). The court further found that the Shireys' waiver of their right to demand a jury trial was not revived by the amended pleading because the new claims arose out of the same transaction as the initial pleadings. The court then refused to exercise its discretion in favor of the Shireys demand under rule 39(b). The Shireys challenge the trial court's actions, arguing that an amended or supplemental pleading which raises a new issue carries the right to demand a jury trial according to rule 38(b) of the Idaho Rules of Civil Procedure. *See Symms v. Thirteenth Judicial Dist.*, 91 Idaho 237, 239, 419 P.2d 679, 681 (1966). The *Symms* court stated that where the counterclaim and reply raise wholly distinct issue from the complaint and answer, a jury demand contained in the counterclaim or reply may be timely as to the former but not for

the latter. *Id.* In *City of Pocatello v. Anderton*, 106 Idaho 370, 679 P.2d 647 (1984), this Court succinctly laid out the law applicable to a demand for jury trial in civil proceedings. The Court held that the failure to make a timely demand under I.R.C.P. 38(b) constituted a waiver of the right. *Id.* at 372–73, 679 P.2d at 649–50. The Court further recognized that an amended pleading which raises a new issue revives the right to demand a jury trial as to that new issue only. *Id.* Finally, the Court stated that, notwithstanding the failure of a party to demand a jury in an action, the court in its discretion may order a trial by jury according to I.R.C.P. 39(b). *Id.* at 373, 679 P.2d at 649.

In this case, the second and third amended counterclaims raise no additional wholly distinct issues for trial that were not present in the complaint and answer. The amended claims present issues such as business interference and various contract-related claims. Because the Shireys' demand for a jury trial was untimely according to I.R.C.P. 38(b), the trial court did not abuse its discretion in denying a jury trial under either I.R.C.P. 38(b) or 39(b). According to I.R.C.P. 38(b) a demand for a jury trial must be made within ten days of the last pleading. If this deadline is not met, the right to demand is waived. I.R.C.P. 38(d). In this case, the Shireys did not demand a jury trial until they filed their first amended counterclaim, ten months after the last pleading, and thus their right to demand a jury trial was waived. The fact that the demand was appended to an amended counterclaim does not defeat the waiver, because the amended counterclaim does no more than assert additional claims arising out of the transaction set forth in the original pleading. *See* I.R.C.P. 38(d) (inclusion of new theories based on the original transaction does not revive right to demand jury trial). Thus, the Shireys are not entitled to a jury trial under I.R.C.P. 38(b). *See Allen Steel Supply Co. v. Bradley*, 89 Idaho 29, 39, 402 P.2d 394, 399 (1965).

█ Notwithstanding I.R.C.P. 38(b), I.R.C.P. 39(b) grants a trial court the discretion to allow a jury trial on any or all issues upon the motion of a party. In its discretion,

the district court in this case denied the Shireys' motion demanding a jury trial. Because the Shireys have failed to provide this Court with an adequate record on appeal from which the Court may intelligently review the soundness of the trial court's discretionary conduct, the trial court must be presumed to have acted properly and sustained. *Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980) (Court held that error will not be presumed on appeal but must be affirmatively shown on the record by appellant, "[w]here an incomplete record is presented to this Court the missing portions of that record are presumed to support the action of the trial court.")

## IV.

## JUDGE WOOD DID NOT ABUSE HIS DISCRETION IN REVERSING THE DECISIONS PREVIOUSLY MADE BY JUDGE BECKER CONCERNING THE SHIREYS' CLAIMS OF LOST PROFITS, CONVERSION AND INTENTIONAL INTERFERENCE WITH CONTRACT IN THE COUNTERCLAIM

■ Upon the Bank's motion to reconsider Judge Becker's decision, Judge Wood ruled that the Shireys could not recover hypothetical "lost profits" based on the theory that, had the Bank not sold the collateral, the Shireys would have repossessed, kept, and used it to earn profits from the operation of the dairy, because, under U.C.C. article 9, the Shireys were not entitled to repossess and retain the collateral. In addition, Judge Wood granted summary judgment to the Bank on the counterclaim issues of conversion and intentional interference, stating that the Shireys failed to come forward with any evidence supporting the issues. The Shireys assert that the district court erroneously granted the Bank's motion for summary judgment on these issues. We hold that the district court correctly acknowledged the absence of any material fact concerning the Shireys' claim for lost profits, conversion,

and intentional interference. The scant record on appeal does not reveal that the Shireys established all of the essential elements of the claims. *See Lamb v. Robinson,* 101 Idaho 703, 705, 620 P.2d 276, 278 (1980) (lost profits must be susceptible of being ascertained with reasonable certainty and within the contemplation of the parties at the time of the contract); *Torix v. Allred,* 100 Idaho 905, 910, 606 P.2d 1334, 1339 (1980) (elements of conversion include demonstration of right to possess collateral and defendant's wrongful disposition of collateral); *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 283–84, 824 P.2d 841, 858–59 (1991) (elements of intentional interference include existence of contract are knowledge of the contract on part of alleged interferant, intentional interference causing breach of the contract, and injury).

## V.

## THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON THE ISSUE OF THE PRIORITY OF THE COMPETING SECURITY INTERESTS

■ The district court ruled that the Bank was entitled to the money in the trust fund as a matter of law according to I.C. § 28–9–312(5) because the Bank was the first to file its financing statement.[1] The district court implicitly rejected the Shireys' argument that the Bank's priority in the cattle would be subordinated to the Shireys' once the initial $185,000 was repaid and that it was, in fact, repaid when the Bank renewed the Allens' loan, by extending the priority to the future advances made by the Bank to the Allens. Similarly, the district court implicitly rejected the Shireys' argument that the "new monies" advanced to the Allens beyond the original $185,000 were not contemplated by the sale agreement and thus did not enjoy the same priority date represented by the original financing statement. The Shireys challenge the district court's position, assert-

1. Idaho Code § 28–9–312(5)(a) exclusively delimits the priority of competing security interests where the facts clearly establish that the security interests have been properly filed, providing that the first interest properly filed holds a superior claim over all other secured and unsecured creditors as a matter of law.

ing that the Bank's legitimate priority in the cattle has long since expired, and the Bank's illegitimate priority in the equipment has also expired with the renewal of the original loan.

The district court relied on I.C. § 28–9–312(7) to extend the Bank's priority to the future advances made to the Allens in the amount of more than $500,000. Idaho Code § 28–9–312(7) provides that "[i]f future advances are made while a security interest is perfected by filing ..., the security interest has the same priority for the purposes of subsection (5) with respect to the future advances as it does with respect to the first advance." Idaho Code § 28–9–204 provides that obligations covered by a security agreement may include future advances or other value. The official comment to the statute stresses that the security agreement must so provide.

In this case, the Bank's security agreement mentions "all livestock and feed now owned or hereinafter acquired." The district court equated the term "after-acquired" with the term "future advances", reasoning that the latter was used to purchase the former. Thus, according to the district court, the security agreement "provided for" future advances. We hold that the "after-acquired" property clause is not sufficient to cover future advances, but that a related clause in the security agreement, namely, that the security interest "is to secure payment and performance of the liabilities and obligations of Debtor to Secured Party of every kind and description ... due or to become due, now existing or hereafter arising[,]" is sufficient. Given this fact, coupled with the undisputed fact that the Bank properly filed the first security interest in the collateral, the district court did not err in ruling that the Bank had a priority interest in the collateral as a matter of law and that the priority extended to "future advances."

## VI.

## THE DISTRICT COURT DID NOT ERR IN AWARDING ATTORNEY FEES TO THE BANK UNDER I.C. § 12–120(3)

The district court determined the Bank to be the prevailing party according to rule 54(d)(1)(B) of the Idaho Rules of Civil Procedure. The court awarded costs as a matter of right and attorney fees pursuant to I.C. § 12–120(3), finding that the Shireys' claim was based upon an alleged commercial transaction of the type identified by the statute which triggered application of the statute even though their claim was denied. The Shireys argue that the district court erred in awarding attorney fees to the Bank under I.C. § 12–120(3) because this action was not based upon a contract or a commercial transaction as contemplated by the statute. We disagree.

The district court properly awarded attorney fees pursuant to the I.C. § 12–120(3) provision which provides for the recovery of attorney fees incurred in litigation based upon any contract. Where a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3), as the Shireys have done, that claim triggers the application of the statute and a prevailing party may recover fees even though no liability under a contract was established. *Twin Falls Livestock Comm'n Co. v. Mid–Century Ins. Co.*, 117 Idaho 176, 184, 786 P.2d 567, 575 (Ct.App.1989) *(rev. denied )*.

Costs and attorney fees on appeal to respondent.

BISTLINE and SILAK, JJ., concur.

JOHNSON, J., concurring and dissenting.

I concur in all of the Court's opinion except Part II (The District Court Properly Granted Summary Judgment in the Counterclaim in Favor of the Bank Based on the Doctrine of *Res Judicata* ).

The Court apparently considers the question of privity to be a question of federal law. I do not. In my view, privity is a question of Idaho law. The Court extensively reviewed the subject of privity in *Foster v. City of St. Anthony*, 122 Idaho 883, 888–90, 841 P.2d 413, 418–20 (1992). Among the cases reviewed in *Foster, Kite v. Eckley*, 48 Idaho 454, 282 P. 868 (1929) seems closest to the facts here. In *Kite*, the Court held that the beneficiaries of a trust are not in privity with the trustee. The Court said: "Privity im-

plies a derivation of title." *Id.* at 460, 282 P. at 870. This illuminates for me that an agency or fiduciary relationship is not sufficient to establish privity under the concept of res judicata (claim preclusion) as this Court has interpreted privity.

TROUT, J., concurs in opinion except joins in JOHNSON, J.'s dissent as to Part II.