**Perry MESSICK, Plaintiff and Appellant,**

v.

**PHD TRUCKING SERVICE, INC., Defendant and Respondent.**

No. 18569.

Supreme Court of Utah.

Feb. 9, 1984.

Jackson Howard, Provo, for plaintiff and appellant.

Robert L. Moody, Provo, for defendant and respondent.

HALL, Chief Justice:

This case has previously been on appeal to this Court. Plaintiff originated the action as the lessor under a truck leasing agreement to compel defendant/lessee to account for payments allegedly due and owing. The pertinent facts that precipitated the cause of action are as set forth in our initial opinion:

Perry Messick, plaintiff, bought a truck from Verl Davies and Ray Hiatt in their individual capacities on December 7, 1963, for $10,000. Messick paid $2,000 down and gave a note for the balance to Davies and Hiatt. Davies and Hiatt are the owners and principal officers of defendant, PHD Trucking Service, Inc. On January 1, 1974, plaintiff, pursuant to a lease agreement, leased the truck to PHD Trucking. The terms of the lease provided that PHD would pay plaintiff on a per-mile basis. The lease expired on July 1, 1974, and an identical agreement was signed by the parties on November 22, 1974. During this time, when credits to plaintiff's account exceeded the expenses, credits to the purchase price of the truck were made to that account. On October 22, 1976, plaintiff sold his truck back to Davies and Hiatt for $2,000 less a $473.97 fuel bill which plaintiff had charged to defendant's account. The total, $1,526.03, was in consideration of

defendant's acquiring all equity and interest that plaintiff had in the vehicle.[1] Upon these facts, the trial court found that an accord and satisfaction had been reached between the parties and accordingly entered judgment for the defendant.

The issues raised in the first appeal were (1) whether there was an accord and satisfaction and (2) whether plaintiff was to be compensated for the use and operation of his truck pursuant to the terms of a written agreement or pursuant to the terms of an oral agreement between the parties. We determined, as to those issues, that (1) there was no evidence to support the lower court's finding of an accord and satisfaction as to all claims, and (2) it was error to permit payment terms other than those found in the written lease. Accordingly, we reversed the trial court and remanded the case.

On remand, plaintiff moved for summary judgment, arguing that he was entitled to judgment as a matter of law by reason of this Court's disposition of the case on appeal. This motion was denied on February 6, 1981, and the matter was set for trial.

At the second trial, which took place on September 9, 1981, and October 15, 1981, the parties addressed the issues pertaining to (1) the mileage driven by plaintiff in defendant's employ, (2) the rate at which the parties had agreed plaintiff would be compensated for driving, (3) the propriety of certain diesel repair charges included in defendant's accounting, (4) entitlement to monies collected for the lease of plaintiff's truck to Clark Tank Lines, and (5) plaintiff's debt to Messrs. Davies and Hiatt for the lease of their trailer. On January 7, 1982, the trial court rendered its decision on the foregoing issues. It ruled that the evidence proffered by the defendant with respect to both the mileage driven by plaintiff and his agreed-upon rate of compensation was the most reliable evidence. In addition, while finding plaintiff entitled to an award for diesel repair overcharges, the court denied his claim for the Clark Tank

Lines shortage. Finally, the court concluded that defendant was entitled to a setoff in the amount of $3,744.30 for the trailer leasing costs. Thereupon, judgment was entered in favor of plaintiff in the amount of $3,857.47, with interest until paid.

On this appeal, plaintiff challenges the findings of the trial court as not being supported by the evidence and seeks the entry of judgment in accordance with his proposed findings, *infra*.

TRAILER RENTAL SETOFF

Plaintiff first contends that it was error for the trial court to offset against the amount owed to him by the defendant *corporation* under the parties' truck (tractor) lease agreement the amounts he allegedly owed defendant's corporate officers (Hiatt and Davies) pursuant to a trailer rental agreement between himself and said officers in their *individual* capacities.

At trial, plaintiff objected to the setoff, arguing that any claim pertaining to the trailer rental lay with the parties to that particular rental agreement, to wit: Davies, Hiatt and plaintiff and not the defendant corporation. After a hearing on the matter, the trial court ruled that the defendant corporation was the "alter ego" of Davies and Hiatt, and thus the setoff was proper.

The trial court's disregard of the corporate entity was purportedly based upon a little-recognized theory associated with the alter-ego doctrine characterized as "reverse-pierce-of-the-corporate-veil" or simply the "reverse pierce" theory. While the practice of piercing the corporate veil generally involves a creditor's seeking redress against a corporate insider (i.e., shareholder or officer) who has used the corporate entity as a shield to defraud the creditor, under the "reverse pierce" theory the "insider" may also pierce the corporate veil to prevent a party outside the corporation from likewise using the entity as a shield to defraud the insider.[2]

**1.** *Messick v. PHD Trucking Service, Inc.,* Utah, 615 P.2d 1276, 1277 (1980).

**2.** *See Crum v. Krol,* 99 Ill.App.3d 651, 54 Ill.Dec. 864, 425 N.E.2d 1081 (1981); *Angelo Tomasso,*

The trial court's ruling with regard to the trailer rental setoff was not fully incorporated into the findings of fact and conclusions of law. The court omitted any mention of "alter ego" and simply found as follows:

The agreement of December 7, 1973 [3] provided for the use by the Plaintiff, of a trailer at the rate of five cents per mile. The Court finds that the Defendant is entitled to a setoff for said trailer leasing costs in the sum of THREE THOUSAND SEVEN HUNDRED FORTY–FOUR AND 30/100 ($3,744.30) DOLLARS.

Plaintiff disputes the propriety of the foregoing finding (Finding No. 6) upon the following grounds: (1) the evidence does not support such a finding, and (2) the finding itself is inadequate. In addition, plaintiff points out that the standard of review in equity cases such as this allows this Court to conduct an independent examination of the facts and to modify or make new findings if the record compels it.[4]

Notwithstanding our broad scope of review as to both questions of law and fact in equity cases, we have stated on numerous occasions that "we are not bound to substitute our judgment for that of the trial court, and because of its advantaged position we give considerable deference to its findings and judgment." [5]

In *Norman v. Murray First Thrift & Loan Co.*,[6] this Court adopted the following two-pronged test for determining when disregard of the corporate entity is justifiable:

[I]n order to disregard the corporate entity, there must be a concurrence of two circumstances: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.[7]

The first prong of the test is often termed the "formalities requirement," [8] referring to the corporate formalities required by statute.[9] It is established upon a showing of the corporation's failure to observe said statutory formalities.[10] The test's second prong is addressed to the conscience of the court, and the circumstances under which it will be met will vary with each case.[11]

The record before us is devoid of proof to justify the trial court's ruling that the corporate entity should be disregarded. No evidence was adduced to establish the corporation's neglect of statutory formalities nor was any evidence received to the effect that observance of the corporate entity would "sanction a fraud, promote injustice, or [produce] an inequitable result."

---

Inc. v. Armor Const., Etc., 187 Conn. 544, 447 A.2d 406 (1982); *Roepke v. Western Nat. Mut. Ins. Co.*, Minn., 302 N.W.2d 350 (1981).

**3.** Buy & Sell Agreement between Davies and Hiatt/sellers, in their individual capacities, and plaintiff/purchaser. This agreement also included a provision whereby plaintiff would lease a truck trailer from the same *individuals*, Davies and Hiatt.

**4.** *See First Security Bank of Utah v. Demiris*, 10 Utah 2d 405, 354 P.2d 97, 99 (1960).

**5.** *Hunter v. Hunter*, Utah, 669 P.2d 430, 431 (1983) (quoting *Nupetco Associates v. Jenkins*, Utah, 669 P.2d 877 (1983)).

**6.** Utah, 596 P.2d 1028 (1979).

**7.** *Id.* at 1030. *See also Automotriz del Golfo de California S.A. de C.V. v. Resnick*, 47 Cal.2d 792,

306 P.2d 1 (1957); *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 95 Idaho 599, 514 P.2d 594 (1973); *Amfac Foods, Inc. v. Intern. Systems, Etc.*, 294 Or. 94, 654 P.2d 1092 (1982).

**8.** Barber, "Incorporation Risks: Defective Incorporation & Piercing the Corporate Veil in California," 12 Pac.L.J. 829, 847 (1981).

**9.** The Business Corporation Act (U.C.A., 1953, § 16–10–1, *et seq.*) sets forth the formalities required of a corporation organized under Utah law. Such formalities include *inter alia:* record keeping, shareholders' meetings, adequate capitalization, stock issuance, etc.

**10.** Barber, "Piercing the Corporate Veil," 17 Willamette L.Rev. 371, 376–77 (1981).

**11.** *Shaw v. Bailey-McCune Co.*, 11 Utah 2d 93, 355 P.2d 321, 322 (1960).

We therefore reverse the ruling, and pursuant to our broad powers of review in equity, *supra*, we find that no justification exists for piercing the veil between the defendant corporation and its officers, Davies and Hiatt. The amount owed to plaintiff by the defendant corporation under the *truck* rental agreement is not subject to offset by amounts allegedly owed by plaintiff to Davies and Hiatt in their individual capacities pursuant to the *trailer* rental agreement.

The foregoing establishes the impropriety of Finding No. 6. It is therefore unnecessary to address plaintiff's remaining argument respecting the inadequacy of said finding.

## COMPENSATION FOR DRIVING– AMOUNT DUE PLAINTIFF

Plaintiff's next contention focuses upon the trial court's finding with respect to the amount of compensation owed to him by the defendant for driving. The disputed finding (Finding No. 9) provides as follows:

> Plaintiff is entitled to driver's compensation at the rate of eight cents per mile from January 1, 1974 to April 1, 1974, at the rate of nine cents per mile from April 1, 1974 to March 29, 1975 and the rate of ten cents per mile from March 29, 1975 until June, 1975, said compensation totaling SIX THOUSAND SIX HUNDRED THIRTY–SIX AND 31/100 ($6,636.31) DOLLARS.

Plaintiff contends that the trial court arrived at the above finding by allowing defendant to introduce evidence outside the terms of the lease agreement, contrary to the mandate of this Court in its prior decision on this case, to wit: "it was error to permit evidence concerning payment terms other than those found in the written lease."[12] Plaintiff's reliance upon that mandate in the context of the present issue is misplaced for the reasons stated hereafter.

Upon examining the subject lease agreement, it appears that it does not contain precise terms as to the amount of compensation to be paid for driving. It merely states, in this respect: "The driver or operator shall be supplied and paid by the lessee." It is the law in this jurisdiction that "when a contract is ambiguous, because of the uncertain meaning of terms, *missing terms*, or other facial deficiencies parol evidence is admissible to explain the parties' intent."[13] (Emphasis added.) The trial court was therefore justified in receiving evidence outside the terms of the lease agreement respecting the rate at which plaintiff was to be compensated for driving.

We further note that the evidence proffered by the plaintiff on this issue was also parol evidence. He alleged that pursuant to an *oral agreement* he was to be paid ten cents per mile for his driving services. Defendant's controverting evidence was that it had agreed to pay plaintiff no more and no less than it paid other drivers. The trial court considered these conflicting parol accounts and ruled in defendant's favor. We see no reason for substituting our judgment for that of the trial court on this issue.

In addition to the foregoing, plaintiff's reliance upon this Court's former mandate (i.e., that evidence concerning payment terms be confined to the terms of the lease agreement) is entirely out of context here. A close examination of our former opinion, and specifically the subject mandate, reveals that the mandate was directed toward the question of what *method* (pay schedule) rather than *rate* of compensation was to be used with regard to plaintiff's driving.[11]

## MILEAGE CALCULATIONS

█ Plaintiff takes further exception to the trial court's adoption of defendant's

---

12. *Supra* n. 1, at 1278.

13. *Faulkner v. Farnsworth*, Utah, 665 P.2d 1292, 1293 (1983). *See also Grow v. Marwick Development, Inc.*, Utah, 621 P.2d 1249 (1980); *Dur-*

*bano Metals, Inc. v. A & K Railroad Materials, Inc.*, Utah, 574 P.2d 1159 (1978).

14. *See supra* n. 1.

evidence with respect to the mileage driven by plaintiff on defendant's behalf.

Plaintiff's evidence in this regard was that he had kept a daily log of the trips made for defendant and had, apparently in preparation for trial, calculated from a state road map the distance of each trip recorded in the log. Based on this method of calculation, plaintiff's total mileage figure was 109,409 miles.

Defendant's conflicting mileage calculation, totalling 105,474 miles, was prepared subsequent to the commencement of trial by driving a car from point of origin to destination on representative trips driven by plaintiff and recording the mileage on the car's odometer. The distances recorded on the odometer differed slightly from those indicated on the state road map, thus accounting for the discrepancy in the parties' mileage calculations.

The trial court adopted defendant's mileage figure, reasoning that an odometer measurement is more accurate than the measurement (mileage) indicated on a state road map. Plaintiff, however, contends that since his calculations were made from records kept daily during the period he drove for defendant, while defendant's were reached through a procedure (odometer measurement) that was not even employed until after the commencement of trial, his (plaintiff's) calculations should have been considered the most accurate.

Again, plaintiff seeks to have this Court substitute its judgment for that of the trial court. We believe the trial court ruled correctly on this matter, especially in view of the fact that plaintiff's daily log, upon which he places so much emphasis, did not contain a daily computation or any information at all regarding miles traveled, but merely contained a record of the trips made. Thus, plaintiff's mileage calculations, like defendant's, were made subsequent to the actual period of time the truck was being driven. We therefore affirm the court's resolution of this issue.

CLARK TANK LINES SHORTAGE

Plaintiff's final contention is that the trial court ruled incorrectly on the defendant's obligation to account for monies received by defendant for the lease of plaintiff's truck to Clark Tank Lines. The contested finding on this issue reads as follows:

Plaintiff failed to establish that the Defendant received any unaccounted for earnings from Clark Tank Lines or that it failed to account to the Plaintiff for such receipts.

During one period of the subject lease, defendant did not have any work for plaintiff's truck. The truck was therefore leased on a temporary basis to Clark Tank Lines (hereinafter Clark). The evidence is conflicting as to who (plaintiff or defendant) authorized and executed the lease. Nonetheless, proceeds from the Clark lease were handled just as they had been under the subject lease, that is, they were received by defendant and thereupon apportioned between plaintiff, the note on the truck and expenses.

Plaintiff argues that the apportionment of the Clark monies by defendant was improper and that he alone was entitled to those monies. His position rests upon the assertion that the lease was executed solely by him, which fact he purports to be evidenced by his signature on the lease agreement and the further indication thereon that he was the registered owner of the truck. He further maintains that the payment arrangement through defendant was merely a "matter of convenience" and not an indication of defendant's privity to the Clark agreement.

The record supports the conclusion that defendant had the right to retain a percentage of the funds received from Clark for the purposes stated above, as well as the obligation to account to plaintiff as to the precise apportionment and disposition of those funds.

Perhaps the best evidence in the record of defendant's right to receive monies from Clark and to retain a percentage thereof as payment toward the balance owing on the truck is the following excerpt of plaintiff's own testimony:

Q: Was the lease with Clark for the purpose of providing money to pay on the truck?

A: Yes.

Q: That's why it went to PHD?

A: Yes.

The record further reveals, contrary to plaintiff's assertions, that defendant was both a party to the lease agreement with Clark and a registered co-owner (with plaintiff) of the truck at the time said lease agreement was drawn.[15]

■ As to the question of accountability, the record shows that plaintiff was never provided any information by defendant with regard to the disposition of the monies received from Clark. Plaintiff was merely tendered his proportionate share, which he assumed was the full amount paid by Clark. He became aware that defendant was apportioning the said monies from Clark through information he obtained from Clark.

Considering the defendant's receipt of monies under the Clark lease and failure to account thereon, we hold that the trial court's finding on this issue, *supra*, is wholly inconsistent with the evidence. Inasmuch as the record does not contain sufficient evidence regarding defendant's apportionment of the Clark monies to enable this Court to determine the fairness thereof, we must remand the case for the purpose of requiring an accounting by defendant as to the disposition of said monies and for a determination on the propriety of said disposition.

We also remand for the purpose of entry of further judgment in favor of plaintiff in the amount of $3,744.30, which amount represents the erroneous trailer rental offset.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

**15.** These facts are drawn from the lease agreement between the parties and Clark Tank Lines (defendant's Exhibit No. 31).