## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 45010

KDN MANAGEMENT, INC., a Utah corporation dba KD CONCRETE DESIGN,

    Plaintiff-Appellant,

v.

WINCO FOODS, LLC, a Delaware limited liability company dba WINCO FOODS; WINCO HOLDINGS, INC., an Idaho corporation;

    Defendants-Respondents,

and

ABC CORPORATIONS I-X, GHI LIMITED LIABILITY COMPANIES I-X, XYZ BUSINESS ENTITIES I-X, JOHN AND JANE DOES I-X,

    Defendants.

--------------------------------------------------------------

WINCO FOODS, LLC, a Delaware limited liability company dba WINCO FOODS,

    Counterclaimant,

v.

KDN MANAGEMENT, INC., a Utah corporation dba KD CONCRETE DESIGN,

    Counterdefendant.

_____

WINCO FOODS, LLC, a Delaware limited liability company dba WINCO FOODS,

    Plaintiff-Respondent,

v.

KYM D. NELSON, an individual; KD3 FLOORING LLC, a Utah limited liability company; and SEALSOURCE INTERNATIONAL, LLC, a Utah limited liability company,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Rexburg, May 2018 Term

Filed: July 30, 2018

Karel A. Lehrman, Clerk

| | )
|---|---|
| **Defendants-Appellants.** | ) |
| | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Steven Hippler, District Judge.

The judgment of the district court is <u>affirmed</u>.

Bennett Tueller Johnson & Deere, Salt Lake City, Utah, for appellant. Daniel K. Brough argued.

Holland & Hart, LLP, Boise, for respondent. A. Dean Bennett argued.

_____

BRODY, Justice.

This appeal involves the district court's denial of a jury trial under Rule 39(b) of the Idaho Rules of Civil Procedure and the decision to pierce the corporate veil. The dispute arises out of a transaction between Kym Nelson, who acted on behalf of KDN Management Inc., ("KDN"), and WinCo, Foods, LLC ("WinCo"), for concrete floor work that KDN performed in several WinCo stores. The district court found that KDN had overcharged WinCo for the work, and awarded WinCo $2,929,383.31 in damages, including attorney fees pursuant to Idaho Code section 12-120(3). The district court also held Nelson and two entities associated with her, SealSource International, LLC ("SealSource"), and KD3 Flooring LLC ("KD3"), jointly and severally liable for WinCo's damages. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

WinCo owns 107 grocery stores which are divided into three geographical divisions. In 2008, Nelson and WinCo's maintenance supervisor for the Portland Division discussed the possibility of KD3 performing concrete floor maintenance and repair work for the Portland Division stores. By January 2010, WinCo and Nelson (using the name "KD Concrete") agreed to the following material terms: "removal and cleaning of current joint material; installation of joint sealant, SL75; price per linear foot at $5; and a five-year labor and material warranty." KD Concrete was to begin work on three test stores in the Portland Division no later than January 2010, and if WinCo was satisfied, KD Concrete would do the work in other stores on the same terms as WinCo needed.

2

On February 18, 2010, Nelson incorporated KDN to perform the WinCo contract that had been negotiated. Nelson registered "KD Concrete Design" as an assumed business name of KDN more than two years later. By March 26, 2010, work at the first three WinCo stores was complete. In April or May 2010, John Weber, the Portland Division maintenance supervisor, suggested to Jim Douty, WinCo's maintenance manager for the Boise Division, that he should contact Nelson about having KD Concrete Design do the floor work in some of the Boise Division stores. Douty had no authority to negotiate a new agreement on behalf of WinCo, but he authorized KD Concrete Design to perform work at certain stores in the Boise Division under the same terms as the original contract. In November of 2011, WinCo refused to pay three invoices over concerns that KDN had overcharged WinCo for the work done.

On October 25, 2012, KDN filed a complaint against WinCo to recover the outstanding balance on the three invoices. WinCo filed counterclaims for breach of contract, breach of implied-in-fact contract, unjust enrichment, and violation of the Idaho Consumer Protection Act, alleging that KDN overstated the work performed in each store and that WinCo had actually overpaid KDN. Upon discovery that KDN was not a registered contractor in Idaho at the time work was performed, WinCo moved for judgment on the pleadings, which the district court granted. WinCo's counterclaims remained.

On February 7, 2014, WinCo filed a motion for summary judgment on its counterclaim for breach of contract. KDN did not oppose the motion, citing that it had no assets or financial resources to defend against WinCo's claims. On April 1, 2014, WinCo filed a new complaint against Nelson, KDN's sole shareholder, as well as her two other business entities, SealSource and KD3 (collectively, the "Nelson Parties"), alleging fraud, breach of contract, breach of implied-in-fact contract, and violation of the Idaho Consumer Protection Act. The cases were consolidated.

On November 12, 2014, the parties filed a stipulation for scheduling and planning. The stipulation contained a provision stating that the parties estimated the case would take five days to try and that it was to be tried by a 12 person jury. Subsequently, WinCo filed first and second amended complaints which included allegations pertaining to piercing the corporate veil and alter ego theories. The Nelson Parties' answer to the second amended complaint contained a section titled "RELIANCE UPON JURY TRIAL DEMAND." It stated: "The Nelson Parties hereby rely upon all prior demands for jury trial submitted by any party to this lawsuit." No party

had ever filed a pleading requesting a jury trial. Thereafter, WinCo filed an objection to a jury trial, citing that there was no proper demand under Idaho Rule of Civil Procedure 38(a). The Nelson Parties filed a motion for jury trial under Idaho Rule of Civil Procedure 39(b), explaining that they did not know why a jury trial was not demanded but that the parties had all operated under the assumption that it was going to be a jury trial; indeed, the case had been set as a jury trial five times. The district court denied the Rule 39 motion, finding that the equitable issues in the case predominated the issues to be decided.

While the case was pending, the district court also dealt with serious discovery violations and spoliation issues committed by the Nelson Parties, both in the form of destruction or alteration of evidence and in the form of nonproduction of evidence. As a result of those violations, the district court imposed adverse inferences against the Nelson Parties at trial. After a nine-day bench trial, the district court issued its findings of fact and conclusions of law in favor of WinCo. The Nelson Parties filed a Rule 59 motion for a new trial or altered judgment, which the district court denied. The district court then entered an amended judgment awarding WinCo $2,929,383.31 against the Nelson Parties, jointly and severally. The Nelson Parties appealed.

### III. ISSUES ON APPEAL

1. Whether the district court abused its discretion by denying the Nelson Parties' motion for jury trial under Idaho Rule of Civil Procedure 39(b).

2. Whether the district court erred when it imposed personal liability upon Nelson.

3. Whether the district court abused its discretion when it found that the Nelson Parties were alter egos of one another.

4. Whether WinCo is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

This Court reviews a district court's refusal to grant a jury trial under Rule 39(b) under an abuse of discretion standard. *City of Pocatello v. Anderton*, 106 Idaho 370, 373, 679 P.2d 647, 650 (1984). This Court also reviews a district court's ruling on equitable remedies for abuse of discretion. *Climax, LLC v. Snake River Oncology of E. Idaho, PLLC*, 149 Idaho 791, 794, 241 P.3d 964, 967 (2010). "[I]ssues of alter ego and veil-piercing claims are equitable decisions." *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 591, 329 P.3d 368, 373 (2014). The test for an abuse of discretion is "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4)

4

reached its decision by the exercise of reason." *Lunneborg v. My Fun Life,* No. 45200, 2018 WL 3150964, at *7 (Idaho June 28, 2018).

The standard of review of a court's findings of fact is set forth in Idaho Rule of Civil Procedure 52(a), which provides:

> Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

I.R.C.P. 52(a)(7). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did. The Court inquires whether the findings of fact are supported by substantial and competent evidence." *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002) (internal citation omitted). "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id*. On review, this Court "liberally construe[s] a trial court's findings in favor of the judgment entered." *Harris, Inc. v. Foxhollow Const. & Trucking, Inc*., 151 Idaho 761, 768, 264 P.3d 400, 407 (2011) (internal quotation omitted). However, a district court's findings of law are subject to free review. *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011).

## V. ANALYSIS

### A.     The district court did not abuse its discretion when it denied the Nelson Parties' motion for jury trial.

The Nelson Parties argue that the district court abused its discretion by denying their motion for jury trial. Generally, Idaho Rule of Civil Procedure 38(b) provides that any party may demand a jury trial of an issue triable by jury, by making a demand no later than fourteen days after the service of the final pleading directed to such an issue. I.R.C.P. 38(b). Failure to properly demand a jury trial under Rule 38 constitutes a waiver of that right. *Id*. at (d). Here, it was undisputed that neither the Nelson Parties nor WinCo filed a proper jury demand. However, when a jury trial is not properly demanded, Rule 39 permits the district court to order a jury trial upon a motion from either party. I.R.C.P. 39(b); *See R. E. W. Const. Co. v. Dist. Court of Third Judicial Dist*., 88 Idaho 426, 443, 400 P.2d 390, 401 (1965) ("Where a jury trial is desired after time to demand a jury as of right has expired, a motion to the [c]ourt under Rule 39, rather than service of a demand under Rule 38 is the proper course."). This Court reviews a lower court's

denial of such a request for abuse of discretion. *City of Pocatello v. Anderton*, 106 Idaho 370, 373, 679 P.2d 647, 650 (1984).

The district court did not abuse its discretion in denying the Nelson Parties' Rule 39(b) motion. This Court has routinely found that there was no abuse of discretion under Rule 39(b) when the requesting party failed to give a reason for the untimely jury demand. *See Anderton*, 106 Idaho at 373, 679 P.2d at 650 (this Court found that no abuse of discretion occurred after the Andertons gave no reason for their failure to make a timely demand); *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 398, 111 P.3d 73, 83 (2005), *overruled on other grounds by Farber v. Idaho State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012) (no abuse of discretion occurred when the Fire District failed to explain why it did not demand a jury trial in the first complaint it filed); *See also Viehweg v. Thompson*, 103 Idaho 265, 269, 647 P.2d 311, 315 (Ct. App. 1982) (The Court of Appeals found the lower court did not abuse its discretion after the defendant made no showing as to why his jury demand was untimely in the first place.).

Here, the explanation the Nelson Parties provided to the district court was that "none of the parties here, the Nelson Parties, know why it wasn't demanded . . . and, wrongfully or not, assumed a demand had been made." This assumption was based on the fact that (1) the case was scheduled as a jury trial approximately five times with no objection from WinCo; (2) the parties executed a stipulation for a 12-person jury trial; (3) local counsel for WinCo stated that a jury trial was likely acceptable to WinCo; and (4) the Nelson Parties made a jury demand in their answer to WinCo's second amended complaint. However, none of these reasons account for why a jury demand was not made at the outset of the case. Indeed, Rule 38 only provides a party fourteen days to properly demand a jury trial. I.R.C.P. 38(b).

While the Nelson Parties and WinCo executed a stipulation in which both parties agreed to a jury trial, the court was not bound by such a stipulation. *See Clow v. Bd. of Cnty. Comm'rs of Payette Cnty.*, 105 Idaho 714, 719, 672 P.2d 1044, 1049 (1983) (Bistline, J., dissenting) ("While counsel truly cannot bind a court by counsel's stipulation as to procedure, it is entirely up to the court whether or not to accept the stipulation"). Indeed, it appears that the court never confirmed the stipulation with an order. Stipulations of counsel do not bind the court, but scheduling *orders* do. Thus, it is incumbent upon counsel to insure that a stipulation for scheduling and planning is confirmed by the court signing an order to that effect which is then filed. Such an order confirms the parties' understanding. *See* I.R.C.P. 16(1) (action taken by the

presiding judge pursuant to the parties' stipulation should result "in the filing of a scheduling order as soon as practicable after the action taken by the court.") (Emphasis added). In this case, such an order would have gone a long way to support the Nelson Parties' belated request for a jury trial pursuant to I.R.C.P. 39(b).

Ultimately, the district court considered the Nelson Parties' arguments, and in its discretion, determined that based on: (1) the number and interweaving of complex equitable issues; (2) the discovery and spoliation issues; and (3) the number of motions in limine pertaining to those issues, that it would proceed as a court trial. Without a reasoned explanation as to why a proper demand was not made as required by Rule 38(a), we hold that the district court acted within its discretion to deny the Nelson Parties' request.

**B.      The district court did not err when it imposed personal liability on Kym Nelson.**

The Nelson Parties argue that the district court erred when it found that an indefinite quantities contract existed and held Nelson personally liable for the overbilling based on theories of pre-incorporation liability and undisclosed principal. Specifically, the Nelson Parties argue that three contracts existed, KDN was incorporated prior to the first contract, and Nelson disclosed the existence of KDN prior to the start of any work.

Whether a contract exists between the parties is a question for the trier of fact. *Johnson v. Allied Stores Corp.*, 106 Idaho 363, 369, 679 P.2d 640, 646 (1984). We defer to findings of fact that are supported by substantial evidence:

> [T]his Court must defer to findings of fact based upon substantial evidence but will review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. S*un Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). Accordingly, we exercise free review over the district court's conclusions of law. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992).

*Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 132 Idaho 754, 760, 979 P.2d 627, 633 (1999).

"Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract. This manifestation takes the form of an offer and acceptance." *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 238, 159 P.3d 870, 875 (2007) (internal quotation marks omitted). An indefinite quantities contract is formed when a buyer agrees to purchase and the seller agrees to supply whatever quantity of services the buyer chooses to purchase from the seller, so long as the buyer agrees to purchase a

minimum quantity. *Torncello v. United States*, 681 F.2d 756, 761 (Ct. Cl. 1982). There must be an obligatory minimum so that the buyer is not permitted to order nothing, which would render its obligations illusory, and therefore, unenforceable. *Id*.

The district court found that WinCo and Nelson, acting on behalf of KD Concrete (the assumed business name of KDN), entered into a contract no later than January 2010, when they agreed to the material terms of the contract: "removal and cleaning of current joint material; installation of joint sealant, SL75; price per linear foot at $5; and a five-year labor and material warranty." Further, because WinCo agreed to pay KDN to do the work at three stores and, if WinCo was satisfied, work could continue on an as-needed basis, an indefinite quantity contract was formed. *See Torncello*, 681 F.2d at 761 (an indefinite quantities contract is formed when a buyer agrees to purchase and the seller agrees to supply whatever quantity of services the buyer chooses to purchase from the seller, so long as the buyer agrees to purchase a minimum quantity). This finding is supported by: (1) the fact that the regional maintenance supervisors for each store had no authority to negotiate new contracts, i.e., Douty testified he had no authority to enter into a new agreement with Nelson; rather, he merely gave Nelson authorization to have KD Concrete perform work on certain stores in the Boise Division under the same terms as the Portland Division; (2) there was no new offer and acceptance for each store; and (3) Nelson never negotiated subsequent contracts. There is substantial evidence to support the district court's determination that an indefinite quantities contract was created in January of 2010, and that KDN breached this contract by substantially overcharging WinCo and overstating the amount of work that was performed.

It is undisputed that Nelson did not incorporate KDN until February 18, 2010. "All persons purporting to act as or on behalf of a corporation, when there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting." I.C. § 30-29-204 (formerly cited as § 30-1-204). Liability is defined as the "condition of being legally obligated or accountable." Black's Law Dictionary (10th ed. 2014). Accordingly, "liabilities," as that term is used in section 30-29-204, arise when a contract is executed, not when the contract is breached. Because KDN was not incorporated until after the contract with WinCo was formed, the district court's holding that Nelson was jointly and severally liable with KDN under the theory of pre-incorporation liability is affirmed. Given this ruling, we do not reach the issue of whether Nelson could also be liable as an undisclosed principal.

8

**C.    The district court did not abuse its discretion when it found the Nelson Parties to be alter egos of one another.**

There is no dispute that Utah law governs the theories of veil-piercing and alter ego liability because KDN is a Utah corporation and KD3 and SealSource are Utah limited liability companies. *See* Restatement (Second) of Conflicts § 307 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts."). Generally, Utah law makes it difficult to pierce the corporate veil because "a corporation is regarded as a legal entity, separate and apart from its stockholders." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 635 (Utah 2012) (quoting *Dockstader v. Walker*, 510 P.2d 526, 528 (Utah 1973)). However, under the alter ego doctrine a stockholder may be liable for the obligations of the corporation. *Id*. "If a party can prove its alter ego theory, then that party may 'pierce the corporate veil' and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with the corporate entity." *Id.* (internal citation omitted).

To pierce the corporate veil, two requirements must be met: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow. *Norman v. Murray First Thrift & Loan Co*., 596 P.2d 1028, 1030 (Utah 1979). "The first prong of the test is often termed the 'formalities requirement,' referring to the corporate formalities required by statute. It is established upon a showing of the corporation's failure to observe said statutory formalities. The test's second prong is addressed to the conscience of the court, and the circumstances under which it will be met will vary with each case." *Messick v. PHD Trucking Serv., Inc*., 678 P.2d 791, 794 (Utah 1984) (internal citations omitted). To satisfy the second prong "it must be shown that the corporation itself played a role in the inequitable conduct at issue." *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 26 (Utah 1990) (internal quotation omitted).

The Utah Supreme Court has adopted the following "Colman factors" to consider in piercing the corporate veil:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6)

9

absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.

*Jones*, 284 P.3d at 636 (citing *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)). These factors are helpful guidelines and not required elements. *Id.* at 637.

Issues of alter ego and veil-piercing claims are equitable questions. *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 156 Idaho 586, 591, 329 P.3d 368, 373 (2014). A district court's ruling on equitable remedies is reviewed for abuse of discretion. *Climax, LLC v. Snake River Oncology of E. Idaho, PLLC*, 149 Idaho 791, 794, 241 P.3d 964, 967 (2010).

The Nelson Parties allege that the district court based its alter ego determination on its finding that the assets of KDN were meticulously siphoned off by Nelson and her other two companies, knowing that KDN had potential liability to WinCo. The Nelson Parties argue this was error because: (1) neither KDN nor Nelson knew of any liability to WinCo at the time the assets were depleted; and (2) KDN's status as an S-Corporation permitted Nelson to spend the money as if it were her own personal income.

First, the Nelson Parties contend that there was no evidence at trial that demonstrated Nelson knew that KDN, or any other Nelson Party, had any liability to WinCo. The Nelson Parties' reliance on Nelson's lack of knowledge is not persuasive. Instead, the district court's findings fit squarely into the *Colman* factors. *See Jones*, 284 P.3d at 636 (citing *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)). Specifically, the district court found that WinCo had presented "overwhelming evidence" that Nelson, KDN, KD3, and SealSource, were so intertwined in their interest and ownership that separate personalities no longer existed:

 (1) KDN was a single-shareholder corporation which was capitalized by Ms. Nelson with only $250 and did not have its own credit cards; (2) Ms. Nelson disregarded corporate formalities—most notably with regard to finances— essentially using all three companies interchangeably and in a manner that indicated that she did not view her entities as separate from herself; (3) KDN's second board member, Tracey Christensen, was non-functioning; (4) there was no evidence that KDN maintained corporate records, such as meeting minutes and bylaws; (5) Ms. Nelson and KD3's accountant, Joel Christenson, intentionally listed KDN as a holding company for KD3 until WinCo alerted Ms. Nelson of potential alter ego claims, at which point Ms. Nelson amended KDN's tax returns and deleted entries in KDN and KD3's Quickbooks to remove any trace of KDN's interest in KD3; and (6) KD3 and SealSource shared the same employees and Ms. Nelson consistently referred to KD3 as a division of SealSource.

10

The Nelson Parties' argument regarding KDN's status as an S-Corporation is equally unpersuasive. An S-Corporation is a pass-through tax entity, "meaning that all revenues, profits, expenses, and losses are passed through, pro rata, to the shareholders based upon their percentage of ownership." *MacFarlane v. Utah State Tax Comm'n*, 134 P.3d 1116, 1117 (Utah 2006) (citing 26 U.S.C. § 1366 (2000)). Here, Nelson was the sole shareholder of KDN. The Nelson Parties assert that Nelson was within her rights to spend the money KDN had been paid since the company's only contract was with WinCo and the work had concluded in 2010. This argument does not account for the district court's finding that that there was overwhelming evidence that the Nelson Parties' withdrawal of KDN's funds were not legitimate KDN expenses, and they were not properly accounted for in KDN, KD3, or SealSource's accounting records. KDN's status as an S-Corporation cannot insulate the Nelson Parties from alter ego liability when there is evidence that such disregard for the corporate form has occurred. Further, the district court's finding highlights the fact that KDN, KD3, SealSource and Nelson were so intertwined in their interest and ownership that their separate personalities no longer existed, making alter ego liability appropriate. The district court's holding is affirmed.

**D.      WinCo is awarded attorney fees and costs on appeal.**

WinCo requests attorney fees on appeal under Idaho Code sections 12-120(3) and 12-121. "When a party prevails at both trial and on appeal, and that party received an award of attorney fees under Idaho Code section 12-120(3) at the trial level and the award is affirmed on appeal, that party is also entitled to an award of attorney fees for the appeal pursuant to Idaho Code section 12-120(3)." *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 142, 357 P.3d 863, 867 (2015). As the prevailing party, WinCo is entitled to attorney fees under Idaho Code section 12-120(3).

## VI. CONCLUSION

We affirm the district court's judgment and award WinCo costs and attorney fees on appeal.


Chief Justice BURDICK, Justices HORTON, BEVAN, and Justice Pro Tem DUNN CONCUR.

11